**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

SLS Capital, S.A.,

    Debtor in Foreign Proceeding.

Chapter 15

Case No. 12-12707 (SCC)

# MODIFIED BENCH DECISION GRANTING THE FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER GRANTING COMITY TO THE LUXEMBOURG DISTRICT COURT'S OCTOBER 23, 2014 ORDER[1]

A P P E A R A N C E S:

TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018
By:   Alex Spizz, Esq.
       Jill Makower, Esq.

COHEN & BUCKLEY, LLP
1301 York Road
Baltimore, MD 21093
By:   Michael L. Cohen, Esq.

*Attorneys for Maître Yann Baden, as Liquidator and Representative of SLS Capital, S.A.*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
By:   Lynn P. Harrison 3rd, Esq.
       Nancy E. Delaney, Esq.
       Michael A. Mix, Esq.

*Attorneys for CRT Capital Group LLC, Michiel C. McCarty, and Robert J. Gibson*

---

[1] A version of this Decision was read into the record at the hearing held July 20, 2015. This Modified Bench Decision corrects miscellaneous typographical and other errors and adds defined terms and citations which were not read into the record.

1

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Foreign Representative's Motion (the "Motion") for an Order Pursuant to 11 U.S.C. §§ 1507 and 1509(b)(3), Granting Comity to the Luxembourg District Court's October 23, 2014 Order. SLS Capital, S.A. ("SLS") is a Luxembourgian Societe Anonyme that is the subject of liquidation proceedings in Luxembourg pursuant to an order of the Luxembourg District Court (the "Luxembourg Court") dated October 1, 2009, ordering the liquidation of SLS and appointing Maître Yann Baden liquidator (the "Liquidation Order"). In an order dated July 25, 2012 [ECF No. 15], this Court recognized SLS's liquidation proceeding in Luxembourg as a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code and recognized Maître Baden as a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code (Maître Baden hereinafter, the "Foreign Representative.") By this Motion, the Foreign Representative seeks an order of this Court granting comity to an order of the Luxembourg Court, dated October 23, 2014, interpreting the Liquidation Order (the "Interpretive Order"). On July 13, 2015, CRT Capital Group LLC ("CRT"), Michiel C. McCarty, and Robert J. Gibson (collectively, the "Arbitration Respondents") filed an opposition to the Motion (the "Opposition") [ECF No. 41] and the declaration of Lynn P. Harrison 3rd (the "Harrison Decl.") in support of the Opposition [ECF No. 42]. On July 17, 2015, the Foreign Representative filed a reply (the "Reply") to the Arbitration Respondents' opposition [ECF No. 44]. The Foreign Representative has also attached the declaration of Maître Yann Baden (the "Baden Decl.") to the Reply. A Hearing on the Motion was held on July 20, 2015.

**BACKGROUND**[2]

David Elias, a resident of Malaysia, formed SLS in 2004 to issue bonds to non-U.S. investors. The proceeds of the issuances were primarily to be used to purchase a portfolio of in-force life insurance policies covering U.S. and Canadian policyholders of at least 65 years of age (the "Life Insurance Portfolio") in the secondary market. The bonds were to be paid with proceeds from the policies comprising the Life Insurance Portfolio and the Life Insurance Portfolio was the principal collateral securing the bonds.

SLS retained CRT, a Connecticut-based broker-dealer, to advise on and structure the bond issuance pursuant to an engagement letter dated March 15, 2005 (the "Engagement Letter").[3] The Engagement Letter contains a provision stating:

> "[a]ny dispute between the parties to this Engagement Letter shall be settled by arbitration before the facilities of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. in the City of New York and will be conducted pursuant to applicable federal laws, the laws of the State of New York applicable to agreements made and to be fully performed therein, without regard to conflicts of law principles, and the rules of the selected arbitral facility."

Messrs. McCarty and Gibson were two of the three CRT employees responsible for the SLS advisory relationship. By early 2006, SLS had sold bonds with an aggregate principle amount of approximately $250 million in four tranches to non-U.S. investors (the "SLS Bondholders"). CRT resigned its engagement with SLS in September 2007.

Beginning in late 2007 and continuing into 2008, SLS liquidated the Life Insurance Portfolio. Both the Foreign Representative and CRT allege that large portions of the proceeds from the sale of the Life Insurance Portfolio were diverted to Mr. Elias and to unrelated entities controlled by Mr. Elias. Following the liquidation of the Life Insurance Portfolio, SLS was

---

[2] Unless otherwise stated, the background statements in this section are taken from the Amended Statement of Claim attached as Exhibit 3 to the Harrison Declaration.
[3] *See* Harrison Decl. Ex. 2

3

unable to pay the interest due to the SLS Bondholders. On October 1, 2009, the Luxembourg Court issued the Liquidation Order.

On July 15, 2014, the Foreign Representative filed a statement of claim against CRT before FINRA (the "FINRA Arbitration"), the successor to the New York Stock Exchange, Inc., seeking, *inter alia*, to recover on behalf of the SLS Bondholders.[4] On July 23, 2014, the Foreign Representative filed a complaint in the District Court for the Southern District of New York against each of the Arbitration Respondents, also seeking certain recoveries.[5] On September 8, 2014, CRT filed a complaint in the District Court for the Southern District of New York seeking to enjoin the FINRA Arbitration and seeking a declaratory judgment that the Foreign Representative is not entitled to arbitrate claims on behalf of the SLS Bondholders (the "CRT Action").[6] On September 29, 2014, CRT filed an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction (the "CRT Motion").[7] In October of 2014, the Foreign Representative amended his statement of claim in the FINRA Arbitration to add Messrs. McCarty and Gibson as respondents and the Arbitration Respondents filed an amended complaint adding Messrs. McCarty and Gibson as plaintiffs in the CRT action and movants in the CRT Motion.[8] In opposing the CRT Motion, the Foreign Representative asserted that Luxembourg law gave him standing to pursue claims on behalf of the SLS Bondholders.[9]

On September 30, 2014, the Foreign Representative filed an application for interpretation in the Luxembourg Court (the "Application for Interpretation") requesting that the Luxembourg Court interpret the Liquidation Order and declare that the Liquidation Order provides that:

---

[4] *See* Opposition, ¶ 16.
[5] *See id.* at ¶ 17.
[6] *See id.* at ¶ 18.
[7] *Id.*
[8] *See* Opposition, ¶ 19.
[9] *See* Support of Defendant SLS Capital's Opposition to Plaintiff CRT Capital's Motion for Temporary Restraining Order [Now, Preliminary Injunction], *CRT Capital Grp. v. SLS Capital, S.A.*, No. 14-CV-7243 JGK [ECF No. 16] at 7-8.

4

(i) the Foreign Representative acts in representation of both [SLS] in liquidation and its creditors;

(ii) the Foreign Representative may file and support any proceeding or suit before the Grand-Duchy of Luxembourg and abroad he deems necessary for the protection of the interests of creditors or to liquidate or realize or take possession of all assets, instruments, securities or debts that are part of [SLS] in liquidation; and

(iii) the Foreign Representative holds the power to defend or participate in any legal action in Luxembourg or abroad "inasmuch as the [Foreign Representative] shall deem such defence, suit, intervention and remedy useful or necessary to the protection of [SLS] assets."[10]

The Luxembourg Court held a hearing on the Application for Interpretation on October 2, 2014. The Arbitration Respondents were not given notice of the Application for Interpretation or of the hearing. The Foreign Representative states that Luxembourg law did not require noticing non-parties to the 2009 liquidation proceeding of the Application for Interpretation.[11] On October 23, 2014, the Luxembourg Court issued the Interpretive Order. The Interpretive Order states that the Liquidation Order should be interpreted to mean that:

(i) the Foreign Representative acts in representation of both [SLS] in liquidation and its creditors;

(ii) the Foreign Representative may file and support any proceeding or suit before the Grand-Duchy of Luxembourg and abroad he deems necessary for the protection of the interests of creditors or to liquidate or realize or take possession of all assets, instruments, securities or debts that are part of [SLS] in liquidation; and

(iii) the Foreign Representative holds the power to defend or participate in any legal action in Luxembourg or abroad "inasmuch as the [Foreign Representative] shall deem such defence, suit, intervention and remedy useful or necessary to the protection of [SLS] assets."[12]

On December 4, 2014, Judge Koeltl denied the CRT Motion. *CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367 (S.D.N.Y. 2014). Judge Koeltl found that "[w]hether [SLS] has standing to bring claims 'on behalf of the bondholders' is a question of standing for the arbitrator, not the Court to decide." *Id.* at 381.

---

[10] *See* Motion Ex. 2.
[11] *See* Baden Decl. ¶¶ 8-9.
[12] *See* Motion Ex. 1.

5

Following Judge Koeltl's order, the Arbitration Respondents voluntarily dismissed the CRT Action and, on April 28, 2015, filed a motion to dismiss in the FINRA Arbitration, arguing that, to the extent the Foreign Representative's claim was brought on behalf of the SLS Bondholders, it should be dismissed because there was no customer account relationship and no arbitration agreement between CRT and the SLS Bondholders.[13] On June 12, 2015, the Foreign Representative filed an opposition to the Arbitration Respondents' motion to dismiss. In his opposition, the Foreign Representative stated that he takes the view that the Interpretive Order states that he has standing to bring claims on behalf of SLS Bondholders under Luxembourg law and argued that the arbitration panel should grant comity to the Interpretive Order.[14] Not surprisingly, the Arbitration Respondents do not share the Foreign Representative's view of the Interpretive Order and, on June 26, 2015, filed a reply in which they argued that Luxembourg law does not grant the Foreign Representative standing to bring claims on behalf of the SLS Bondholders and, in support of that assertion, attached an opinion of the Luxembourg law firm of Loyens and Loeff stating that, under Luxembourg law, a judicial liquidator such as the Foreign Representative does not have standing "to take legal action which only benefits an individual creditor."[15] The FINRA arbitration panel heard argument on the Arbitration Respondents' motion to dismiss on July 16, 2015. As of this writing, no decision has been issued by the FINRA arbitration panel.

## LEGAL STANDARD

The Foreign Representative urges the Court to grant comity to the Interpretive Order under sections 1507 and 1509(b)(3) of the Bankruptcy Code. Section 1509(b)(3) provides that, "If the court grants recognition under section 1517, and subject to any limitations that the court

---

[13] *See* Opposition ¶ 23.
[14] *See id.* at ¶ 24.
[15] *See* Harrison Decl. Ex. 1.

6

may impose consistent with the policy of this chapter…a court in the United States shall grant comity or cooperation to the foreign representative."[16] However, "[n]othing in section 1509 commands that comity shall be given to all orders entered by a foreign court in a foreign insolvency proceeding…[O]ther than providing access to courts in the United States, section 1509 is not a self-executing relief section of Chapter 15. Relief to a foreign representative must be based on sections 1507, 1519, 1520 and 1521, subject to the limitations that may be imposed under section 1522." *CT Investment Management Co. LLC v. Cozumel Caribe S.A. de C.V. (In re Cozumel Caribe S.A. de C.V.)*, 482 B.R. 96, 109 (Bankr. S.D.N.Y. 2012). Accordingly, section 1509(b)(3) does not provide the Court with an independent basis for granting the Motion and the relief sought by the Foreign Representative, if it is to be granted, must be granted in accordance with section 1507.

Section 1507(a) provides that, "Subject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States."[17] Section 1507(b) further provides that, in determining whether to grant such additional assistance, "the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—

(1) just treatment of all holders of claims against or interests in the debtor's property;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of the debtor;

---

[16] 11 U.S.C. § 1509(b)(3).
[17] 11 U.S.C. § 1507(a).

7

(4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and

(5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."[18]

Accordingly, in determining whether to grant the additional assistance of granting comity to the Interpretive Order, the Court must assess whether granting comity to the Interpretive Order is consistent with principles of comity and whether granting comity to the Interpretive Order reasonably assures the enumerated protections reflected in section 1507(b).

## DISCUSSION

The Arbitration Respondents advance arguments with respect to both prongs of the section 1507 analysis, arguing that granting comity to the Interpretive Order is not permitted under section 1507 because (i) granting comity to the Interpretive Order would be inconsistent with the principles of comity and (ii) granting comity to the Interpretive Order does not reasonably assure the protections enumerated in section 1507(b).

As an initial matter and as discussed further below, the majority of the Arbitration Respondents' opposition is premised on the assumption that, if the Court granted the Motion and granted comity to the Interpretive Order, the Court would also be granting comity to the Foreign Representative's interpretation of the Interpretive Order, i.e., that the Interpretive Order provides that the Foreign Representative has standing to bring claims on behalf of the SLS Bondholders under Luxembourg law. This premise is inaccurate. As the Foreign Representative stated in its reply, "[t]he [Motion] seeks only to have this Court grant comity to the [Interpretive] Order"[19]

---

[18] 11 U.S.C. § 1507(b).
[19] Foreign Representative's Reply to Opposition of CRT Capital Group LLC, Michiel C. McCarty, and Robert J. Gibson to the Foreign Representative's Motion for Order Pursuant to 11 U.S.C. §§ 1507, 1509(b)(3), Granting Comity to the Luxembourg District Court's October 23, 2014 Order [ECF No. 44] at 3.

8

and "[t]he Foreign Representative is not asking this Court to interpret foreign law."[20]  These

proceedings have shown that the Interpretive Order is subject to different interpretations on the

key question of whether it establishes that the Foreign Representative has standing to bring

claims on behalf of the SLS Bondholders under Luxembourg law.  The Court has not been asked

to grant comity to any interpretation of the Interpretive Order and expressly declines to do so.

Accordingly, in evaluating the Motion, the Court need only analyze whether granting comity to

the Interpretive Order itself, but not to any additional interpretation of such order, is consistent

with the requirements of section 1507.

**<u>Consistency with the Principles of Comity</u>**

In assessing whether granting recognition to a foreign order or proceeding is consistent

with principles of comity, courts have found that "a foreign judgment should generally be

afforded comity if its proceedings are fair and impartial."[21]  While "[i]t is implicit in the concept

that deference should be withheld where appropriate to avoid violation of the laws, public

policies, or [where deference is] contrary to the public policy of the United States,"[22]  this

exception to the principle of deference is to be narrowly construed to the most fundamental

policies of the United States.[23]  Further, the procedures of a foreign proceeding and the relief

available need not be identical to the procedures and the relief available in a U.S. proceeding.

"We are not so provincial as to say that every solution of a problem is wrong because we do it

differently at home."  *Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir. 1986).  Accordingly, a

U.S. bankruptcy court is not required to make an independent determination about the propriety

---

[20] Reply at ¶ 24.
[21] *Collins v. Oilsands Quest Inc. (In re Oilsands Quest Inc.)*, 484 B.R. 593, 597 (S.D.N.Y. 2012)
[22] *Id.*
[23] *See In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333 (S.D.N.Y. 2006); *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010).

of individual acts of a foreign court. The key determination required by this Court is whether the procedures used in Luxembourg meet our fundamental standards of fairness.[24]

The Arbitration Respondents argue that granting the Motion would be inconsistent with the principles of comity because (i) "recognition of the [Foreign Representative's] interpretation of the [Interpretive] Order violates U.S. law,"[25] (ii) the [Interpretive] Order was not obtained consistent with due process,"[26] and (iii) "the requested relief is unprecedented."[27] None of these arguments persuades the Court that the proceedings in the Luxembourg Court were not fair and impartial or that affording the Interpretive Order comity violates a fundamental policy of the United States. Accordingly, granting comity to the Interpretive Order is consistent with the principles of comity.

Granting Comity to the Interpretive Order and U.S. law

The Arbitration Respondents first argue that granting the Motion will violate U.S. law because it will (i) cause the Court to intervene in the arbitration to resolve issues that are to be determined in the arbitration, in contravention of the Federal Arbitration Act and *Michaels v. Mariforum Shipping, S.A.*[28] and its progeny, (ii) violate Judge Koeltl's order, which provides that "[w]hether [SLS] has standing to bring claims 'on behalf of the bondholders' is a question of standing for the arbitrator, not the Court to decide" by usurping the power of the arbitrators and deciding the issue of standing, and (iii) violate FINRA Rule 12209, which prevents a party from "bring[ing] any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration."

---

[24] *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010).
[25] *See* Opposition ¶¶ 46-49.
[26] *See id.* ¶¶ 50-52.
[27] *See id.* ¶¶ 53-54.
[28] 624 F.2d 411 (2d Cir. 1980).

10

The Foreign Representative views the Interpretive Order as confirming that he has standing to pursue claims on behalf of the SLS Bondholders under Luxembourg law while the Arbitration Respondents contend that it "does not address whether the [Foreign Representative] may file suit on behalf of individual creditors or one subset of creditors."[29]  Accordingly, the Arbitration Respondents argue, if the Court were to grant comity to the Foreign Representative's view of the Interpretive Order, it would resolve issues properly before the FINRA arbitrators and thus violate the Federal Arbitration Act, Judge Koeltl's order, and FINRA Rule 12209.  As described above, however, the Motion asks the Court to grant comity to the Interpretive Order, not to any interpretation thereof.  The Court can therefore grant the Motion, and afford comity to the Interpretive Order, without resolving the issues of (1) whether the Foreign Representative has standing to pursue the claims of the SLS Bondholders under Luxembourg law; (2) the Interpretive Order's effect, if any, on such issue; and (3) the effect, if any, of the Foreign Representative's standing, or lack thereof, to bring claims on behalf of SLS Bondholders on the further issue of whether the Foreign Representative may assert claims on behalf of the SLS Bondholders in the FINRA Arbitration.  Granting comity to the Interpretive Order leaves each of those issues to the sound discretion of the FINRA arbitrators, consistent with U.S. law.

Due Process

The Arbitration Respondents further argue that granting the Motion is inconsistent with principles of comity because the Interpretive Order was obtained in a manner inconsistent with due process.  Specifically, the Arbitration Respondents contend that, because they were not given notice of the Application for Interpretation and because they were not present to argue the Application for Interpretation before the Luxembourg Court, the Interpretive Order was not fully

---

[29] Opposition ¶ 41.

contested and litigated and therefore does not require the Court to grant deference to it.[30] The Arbitration Respondents further assert that granting the Motion would be inconsistent with principles of due process because it raises the possibility that the Arbitration Respondents could face claims by the Foreign Representative on behalf of SLS Bondholder while at the same time facing separate claims asserted by SLS Bondholders claiming that the Foreign Representative did not have the right to litigate on their behalf.[31]

With respect to the first due process concern, lack of notice, the Foreign Representative has credibly represented that, under Luxembourg law, only parties to the liquidation proceeding were required to receive notice of the Application for Interpretation and an opportunity to oppose the relief requested by the Foreign Representative.[32] The Arbitration Respondents do not assert that they were required to receive notice of the Application for Interpretation under Luxembourg law, and do not assert that, had they appeared before the Luxembourg Court to present an argument, they would have been denied such opportunity. Accordingly, the Arbitration Respondents ask this Court to find that the failure of the Arbitration Respondents to receive notice, an action or inaction seemingly consistent with Luxembourg law, offends the public policy of the United States such that the Interpretive Order is not entitled to deference. In *IIT v. Cornfeld*,[33] the District Court for the Southern District of New York found that an order of a Luxembourg Court appointing liquidators was entitled to comity, notwithstanding that, consistent with Luxembourg law, a defendant in the litigation before the district court had not

---

[30] Opposition ¶ 51.
[31] Opposition ¶ 52.
[32] *See* Baden Decl. ¶¶ 8-9.
[33] 462 F. Supp. 209 (S.D.N.Y. 1978) *aff'd in part, rev'd in part*, *IIT an Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980).

received notice of the liquidation proceeding.[34] The Second Circuit affirmed the district court's finding, stating that it was "totally unimpressed" with the procedural due process arguments.[35]

Despite the persuasive holding of *IIT*, the Arbitration Respondents urge the Court to follow two other cases, *In re Sivec SRL*[36] and *In re Solar Trust of Am., LLC*[37] in which courts found that due process was so lacking in a foreign proceeding that an order of a foreign court was not entitled to deference. In *In re Sivec SRL*, the Bankruptcy Court for the Eastern District of Oklahoma considered a "Request for Comity," allegedly from an Italian judge, requesting that Sivec SRL and a creditor asserting a right of setoff, who had not received notice of the Italian proceeding, proceed before an Italian tribunal to determine rights of setoff. The "Request for Comity" was later found to have been drafted by Sivec SRL's U.S. counsel and to have been sent by Sivec SRL's receiver as if from the Italian judge herself.[38] Further, the court found that (i) while the creditor asserting the right of setoff would be secured to the extent of such setoff under U.S. law, no such security interest existed under Italian law and (ii) no explanation or assurance had been given as to how the creditor's rights would be protected if an Italian court found it was entitled to setoff.[39] Against this backdrop, the court found that protection of the U.S. creditor's interest in the Italian proceeding could not be reasonably assured and that basic elements of due process were lacking in the Italian proceeding, and thus declined to grant the "Request for Comity."[40]

In *In re Solar Trust of Am., LLC*, the Bankruptcy Court for the District of Delaware considered whether to allow a proof of claim filed against the debtor for legal fees of a German

---

[34] 462 F. Supp. at 216.
[35] 691 F. 2d at 916 n.9.
[36] 476 B.R. 310 (Bankr. E.D. Okla. 2012).
[37] No. 12-11136 (KG), 2015 WL 1011548 (Bankr. D. Del. Jan. 12, 2015).
[38] 476 B.R. at 318.
[39] *Id*. at 324-25.
[40] *Id*. at 325-26.

13

law firm.[41] The German law firm, consistent with German statutory law, reported its fees in accordance with a strict calculation based upon the amount at issue in the work, rather than the reasonableness of the fees.[42] A German appellate court, in a proceeding in which the debtor was not present or represented, determined the amount at issue to be €30,000,000, reversing a decision of the German lower court, which had found the amount at issue to be €25,000.[43] The German law firm urged the court to grant comity to the decision of the German appellate court and allow the fees, but the court declined, holding that the fees would be disallowed to the extent that they exceeded the reasonable value of the work performed. The court stated:

> "[a]lthough international comity requires deference to be given to decisions by competent international courts, this Court cannot simply ignore its own responsibility to review the reasonableness of attorneys' fees when the fees directly affect the bankruptcy case. This is especially true in the insolvency context where the judicial action violates the automatic stay and the Debtor was not present or represented in the foreign proceeding."[44]

The facts in each case demonstrate the extreme nature of the situations in which a court declines to grant deference to a foreign court and also show that neither case is apposite to the situation here. While the courts in *In re Sivec SRL* and *In re Solar Trust of Am., LLC* expressed concern over a party's lack of notice of, or participation in, a foreign proceeding, neither court's decision to decline deference to the foreign court was based upon these factors alone. The Arbitration Respondents are not secured creditors who will be left with no security interest or protection for a claim if the Court grants deference to the Interpretive Order. Nor will the Court abdicate any of its responsibilities under the Bankruptcy Code by granting deference to the Interpretive Order. Accordingly, the Court finds that, consistent with *IIT*, the failure of the

---

[41] *In re Solar Trust of Am., LLC*, No. 12-11136 (KG), 2015 WL 1011548 (Bankr. D. Del. Jan. 12, 2015) at *1.
[42] *Id*. at *2.
[43] *Id*.
[44] *Id*. at *6.

Arbitration Respondents to receive notice, an action or inaction seemingly consistent with Luxembourg law, does not offend the public policy of the United States.

The Arbitration Respondents' second due process concern is again premised on the incorrect assumption that granting comity to the Interpretive Order necessarily requires the Court to grant comity to the Foreign Representative's interpretation of the Interpretive Order. The Court is not granting comity to the Foreign Representative's, or anyone else's interpretation of the Interpretive Order, and is taking no position whatsoever on whether the Foreign Representative has standing to pursue the claims of the SLS Bondholders. Accordingly, granting the Motion, by itself, does not raise the possibility that the Arbitration Respondents will face claims by the Foreign Representative on behalf of SLS Bondholders and by SLS Bondholders who would argue that the Foreign Representative did not have authority to litigate on their behalf.

The Requested Relief is not Unprecedented

Finally, the Arbitration Respondents argue that "[t]he [Foreign Representative] has not cited a single case in which a court granted comity to an order of a foreign court (in Luxembourg or anywhere else) stating that a liquidator or trustee may bring claims on behalf of individual creditors."[45] This argument again incorrectly (and inaccurately) assumes that granting comity to the Interpretive Order necessarily requires the Court to grant comity to the Foreign Representative's interpretation of the Interpretive Order as granting him standing to bring claims on behalf of individual creditors. As stated above, the Court can grant comity to the Interpretive Order without taking a position on how the Interpretive Order should be interpreted. Granting comity to orders of foreign courts is certainly not unprecedented.

**The Enumerated Protections of Section 1507(b)**

---

[45] Opposition ¶ 53.

The Arbitration Respondents finally argue that, even if granting comity to the Interpretive Order is consistent with principles of comity, such relief nonetheless does not reasonably assure the enumerated protections of section 1507(b) and should be denied on that basis. The Arbitration Respondents argue only that the first of the five enumerated protections -- "the just treatment of all holders of claims against or interests in the debtor's property"[46] -- is not reasonably assured by granting comity to the Interpretive Order.[47] Specifically, the Arbitration Respondents argue that, given the disparate nature of the SLS creditors, and even the SLS Bondholders, the Court cannot reasonably assure the just treatment of all holders of claims or interests in SLS's property where the Foreign Representative seeks to "represent" a subset of the SLS creditors if it grants comity to the Interpretive Order.[48] As emphasized in this decision, granting comity to the Interpretive Order does not resolve the question of whether the Foreign Representative has standing to "represent" the claims of the SLS Bondholders under Luxembourg law or whether the Foreign Representative has standing to "represent" the claims of the SLS Bondholders in the FINRA Arbitration. Accordingly, the Arbitration Respondents' section 1507(b) concern, that just treatment of all holders of claims or interests in SLS's property is not reasonably assured because the Foreign Representative seeks to "represent" a subset of the SLS creditors, the SLS Bondholders, is not implicated by granting comity to the Interpretive Order. The Court further finds that, in addition to reasonably assuring the just treatment of all holders of claims or interests in SLS's property, granting comity to the Interpretive Order reasonably assures each of the other protections enumerated in section 1507(b).

**CONCLUSION**

---

[46] 11 U.S.C. § 1507(b)(1).
[47] Opposition ¶ 55.
[48] *See* Opposition ¶ 56.

The Court finds that the additional assistance requested by the Foreign Representative, granting comity to the Interpretive Order, is consistent with the principles of comity and reasonably assures each of the protections enumerated in section 1507(b). Accordingly, the Court will grant comity to the Interpretive Order pursuant to section 1507. The Court takes no position on whether or how the Interpretive Order resolves the issue of the Foreign Representative's standing to bring claims under Luxembourg law or whether the Interpretive Order affects the question of how the Foreign Representative has standing to bring claims in the FINRA Arbitration.

Dated: July 20, 2015
New York, New York

                                                                             /S/ Shelley C. Chapman
                                                                             UNITED STATES BANKRUPTCY JUDGE